Sarah L. McDONALD, Plaintiff-Appellee,

v.

Richard SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellant.

No. 83–1046.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1983.

Decided Dec. 12, 1983.

Rehearing and Rehearing En Banc Denied March 15, 1984.

---

R. Lawrence Steele, Jr., Hammond, Ind., Donald P. Moroz, So. Bend, Ind., William Kanter, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Gregory S. French, Legal Services Program of Northern Ind., South Bend, Ind., Ivan E. Bodensteiner, Legal Services Program of Northern Ind., Valparaiso Un. School of Law, Valparaiso, Ind., for plaintiff-appellee.

Before CUDAHY and POSNER, Circuit Judges, and WILKINS, Senior District Judge.*

POSNER, Circuit Judge.

This appeal by the government from a fee award under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), requires us to decide a question of first impression in this circuit: whether an application for such an award is untimely if filed more than 30 days after the district court renders its final judgment, although less than 30 days after any appellate proceedings are completed.

In 1975 Mrs. McDonald, who was then 58 years old, asked her local social security office whether she would be eligible for social security benefits when she reached 62. She was told she would not be, because she would be six quarters short of the work experience required for early retirement. The office had miscomputed; she had all the requisite quarters. But not knowing this she did not apply for social security benefits when she reached 62 in November 1978. Some months later, however, she

* Hon. Philip C. Wilkins of the Eastern District of California, sitting by designation.

happened to be in the social security office with her husband, who was applying for his own benefits, and in the course of interviewing him the staff looked through its file on the couple and discovered the mistake. Mrs. McDonald applied for benefits immediately and was awarded them, but only from the date of application—August 1979—rather than from the date on which she had become eligible. After exhausting her administrative remedies Mrs. McDonald brought this action in federal district court under 42 U.S.C. § 405(g) to challenge the government's refusal to pay benefits to her from the earlier date. Her theory was that the government was estopped, by its having misinformed her, to enforce the statutory provision that (with immaterial exceptions) bars payment of social security benefits for any period before they are applied for. See 42 U.S.C. §§ 402(a)(3), 402(j)(4).

Since the proceeding in the district court was a review proceeding involving no taking of evidence, the court directed the parties to file simultaneous motions for summary judgment, and to do so by October 1, 1981. Although Mrs. McDonald filed her motion on time, the government neither filed its motion nor requested an extension of time. The court did not declare the government in default, but did on October 5 grant Mrs. McDonald's motion for summary judgment and enter judgment for her for $652.50. 537 F.Supp. 47 (N.D.Ind.1981). The government filed a notice of appeal to this court on December 2, 1981, which was within the 60 days that the government has to appeal, see Fed.R.App.P. 4(a)(1). But on March 24, 1982, after the time for filing its appeal brief had expired, the government moved to dismiss the appeal, and it was dismissed on March 30. On April 29 Mrs. McDonald moved the district court for an award of $3,000 in attorney's fees under the Equal Access to Justice Act and $71 in costs. The district court granted the motion. 551 F.Supp. 327 (N.D.Ind.1982). The government has appealed only from the award of attorney's fees.

The Equal Access to Justice Act requires the district court to "award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). But a party seeking such an award "shall, within thirty days of final judgment in the action, submit to the court an application ...," 28 U.S.C. § 2412(d)(1)(B), and we must first decide whether the plaintiff's application for attorney's fees, filed more than 30 days after the district court's judgment in her favor but within 30 days after dismissal of the government's appeal, which made the district court's judgment final in the sense of no longer contestable through the appellate process, was timely, as the district court held. 551 F.Supp. at 329–30.

█ The term "final judgment," which appears 151 times in the United States Code, does not have a single fixed meaning. Sometimes it denotes a judgment that disposes of the plaintiff's claim in the district court. See, e.g., Fed.R.Civ.P. 54(b); cf. 28 U.S.C. § 1291 ("final decisions"). But sometimes it denotes the judgment that writes *finis* to the entire litigation, after all appellate remedies have been either exhausted or, as here, abandoned. See, e.g., Clayton Act, § 5(a), 15 U.S.C. § 16(a). Context may disambiguate. Where the purpose of a statute or rule is to indicate what orders are appealable, as is true of Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1291, finality must refer to the pre-appellate proceedings. But in a statute such as 46 U.S.C. § 748, which defines the circumstances under which the United States will pay admiralty claims, "final judgment" must mean final after all appeals, for one cannot imagine the government being willing to pay before then (as we are about to see).

█ In this case we have only context, or stated otherwise purpose inferable from context, to guide us. The legislative history of the Equal Access to Justice Act contains

no explanation of the meaning of "final judgment." The government's suggestion that the question can be decided by reference to the familiar proposition that waivers of sovereign immunity are narrowly construed is unpersuasive since we cannot see what difference it will make to the Treasury of the United States if the 30-day period for making a fee application runs from the end of the district court proceedings or from the end of all the proceedings; the amount of the fee award will not be affected and that is the important thing to the public fisc.

The practical consequences of the government's interpretation persuade us that it is wrong. One such consequence is the cost to the applicant of having to file multiple fee applications. *United States v. 329.73 Acres,* 704 F.2d 800, 810–11 (5th Cir.1983), holds, and the government does not question, that the Equal Access to Justice Act, like other attorney-fee statutes, allows a prevailing party in appropriate cases to obtain an award of fees for time spent prosecuting or defending an appeal as well as for time spent litigating in the district court. Cf. *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir.1980). This in itself is a damaging concession for the government to make since if "final judgment" means final judgment in the district court a prevailing party would have to file an application for fees on appeal before the amount of those fees was known. As this would be a rather absurd way of proceeding we interpret the government's concession to mean that, for purposes of getting an award of fees for appellate work, "final judgment" means the final decision of the appellate court. This shows that "final judgment" indeed does not have one meaning and also that under the government's view Mrs. McDonald would have had to file a second fee application, for any appellate work (if the government had pursued its appeal), after the end of the appellate proceedings. It makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings, though if the government unreasonably resists the fee application, and the claimant seeks fees for proving fees, as in *Bond v. Stanton, supra,* 630 F.2d at 1235, or *Muscare v. Quinn,* 680 F.2d 42 (7th Cir.1982), the claimant would have to file a supplementary fee application after the conclusion of the proceeding on his initial fee application.

The other side of the coin is that requiring the fee application to be filed within 30 days of the district court's final judgment would allow the application to be acted on in time for any appeal from the fee award to be consolidated with the appeal from the judgment, thus effecting a judicial economy at the court of appeals level. This would parallel suggestions that have been made for establishing, by order of court, deadlines for filing applications for attorney-fee awards under other statutes. See, e.g., *Obin v. International Ass'n of Machinists & Aerospace Workers,* 651 F.2d 574, 583 (8th Cir.1981). But there is no indication that the Congress that enacted the Equal Access to Justice Act was worried about the burdens the Act might place on the courts of appeals. And in any event the judicial economy may be largely illusory if as we have said the claimant is entitled in suitable cases to reimbursement of appellate fees. It may be illusory for another reason. The legislative history indicates and the government concedes that the 30-day provision in the Act was meant to establish a deadline, not a starting point. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18 (1980), U.S.Code Cong. & Admin.News 1980, p. 4953. The claimant can apply for fees as soon as he has prevailed, i.e., as soon as the district court has entered its final judgment; and in many cases the claimant's lawyer, being hungry to see some cash, will do just that and the advantages of consolidated appeals will be realized. (As we shall see, the lawyer will not actually be paid till all appellate proceedings are finished; but the sooner he gets his fee application in and the award is made and, should the government challenge it, affirmed on appeal, the sooner he will be paid after the judgment for his client finally becomes final.) In any event, giving the claimant a choice whether to ask

for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch.

An additional consideration is that to force the claimant to put in his fee application within 30 days of the filing of the final judgment in the district court, which is to say before the government need file its notice of appeal, delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of the Equal Access to Justice Act perverse weapon for discouraging meritorious fee applications. As this case demonstrates, the government is unlikely to pursue an appeal where the stakes are only $652.50. Its adversary knows this and knows also that if he increases the stakes to the government by applying for fees, the government (as it emphasized to us in its briefs and at argument) will be more likely to appeal the underlying judgment. Thus, if Mrs. McDonald's counsel had had to decide whether to apply for fees before the government had to decide whether to pursue the appeal, he would have faced an exquisite dilemma: forgo any fee application and thereby preserve the wretched pittance that his client had wrung from the Social Security Administration only after bringing a review proceeding in a federal district court, or jeopardize her judgment in the hope of getting a reasonable fee for his work. The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words "final judgment" without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government. See H.R.Rep. No. 1418, *supra,* at 18. Finally, we are told that the General Accounting Office will not approve payment of a claim under the Equal Access to Justice Act until all appellate proceedings are ended; and we are at a loss to see what interest is served by requiring that the fee application be made before—sometimes long before—it is actually payable.

We conclude that Mrs. McDonald's fee application was timely. Although the Ninth Circuit reached the opposite conclusion in *McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983), we are not persuaded by its analysis, which reads in its entirety as follows: "'final judgment' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a), and Fed.R.Civ.P. 54." (Actually, the term "final judgment" does not appear in 28 U.S.C. § 1291 or Fed.R.App.P. 4(a).) Other courts have allowed the fee application to be made after the completion of appellate proceedings. See *United States v. 329.73 Acres, supra,* 704 F.2d at 810–11; *Rawlins v. United States,* 686 F.2d 903, 914, 210 Ct.Cl. 672 (1982); *Knights of the Ku Klux Klan Realm v. East Baton Rouge Parish School Bd.,* 679 F.2d 64, 66–68 (5th Cir. 1982). We think theirs is the better approach. Although *Guthrie v. Schweiker,* 718 F.2d 104, 106 (4th Cir.1983), cites the *McQuiston* holding, it does so for an entirely different purpose.

The relevant provisions of the Equal Access to Justice Act are due to expire on October 1, 1984. See Pub.L. 96–481, Oct. 21, 1980, Title II, § 204(c), 94 Stat. 2329. Assuming it decides to reenact the Act in some form, Congress could easily resolve the question that we have been struggling with in this opinion by adding "in the district court" after "within thirty days of final judgment," if it prefers the Ninth Circuit's resolution of the question; or by changing the present language to read "within thirty days after the judgment in the district court has become final and unappealable, or after the court of appeals or the Supreme Court has entered a final judgment," cf. 12 U.S.C. § 93(b)(5), if it prefers ours. Incidentally, the government argues that because some statutes use language such as just suggested (besides 12 U.S.C. § 93(b)(5), see, e.g., 28 U.S.C. § 2414; 31 U.S.C. § 1304(b)(1)), this shows that when Congress uses the words "final judgment" without explicitly adding "final after all appellate proceedings" (or words to that effect) it must mean final just in the district court. But apart from the fact that

some of the abbreviated formulations must (as we noted earlier) refer to finality after exhaustion of appellate proceedings, and the further fact that the government itself concedes that "final judgment" in section 2412(d)(1)(B) means final judgment of the court of appeals or the Supreme Court when fees are being sought for legal services on appeal, it is unrealistic, if not comical, to treat the United States Code as if it had been written by one person at one time employing consistent usage.

■ We turn now to the merits, where the question is whether "the position of the United States was substantially justified." Now "substantially justified" does not mean "nonfrivolous"; that is the standard the government urged, and Congress rejected. See *Spencer v. NLRB*, 712 F.2d 539, 551 n. 44 (D.C.Cir.1983). It means that the government must have a solid though not necessarily correct basis in fact and law for the position that it took in this action. See *id.* at 558; *Natural Resources Defense Council, Inc. v. EPA*, 703 F.2d 700, 706–09 (3d Cir.1983); S.Rep. No. 253, 96th Cong., 1st Sess. 6 (1979); H.R.Rep. No. 1418, *supra,* at 10.

In *Portmann v. United States*, 674 F.2d 1155, 1158–65 (7th Cir.1982), in the course of analyzing the application of the doctrine of equitable estoppel to federal government agencies, we reaffirmed our earlier decision in *Gressley v. Califano*, 609 F.2d 1265 (7th Cir.1979), which had rejected the use of the doctrine to make the government pay social security disability benefits to a claimant not entitled to them under the social security statute. "Congress leaves no discretion in the agencies and courts but to limit payment of benefits to those statutorily entitled to them." 609 F.2d at 1268. And the year before *Portmann* the Supreme Court had seemed to go out of its way to avoid acknowledging that there are *any* areas where the federal government can be estopped by the action of its employees to assert its legal rights. *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). *Hansen* implies that the kind of simple clerical error that was made in this case would not work an estoppel requiring that social security benefits be paid to someone who is not statutorily entitled to them, although the narrow holding of the case concerns oral misinformation to the applicant and here it was made in writing. The practical reasons for not allowing estoppel in social security cases, forcefully stated in Judge Friendly's opinion dissenting from the court of appeals decision that the Supreme Court reversed in *Hansen,* see *Hansen v. Harris,* 619 F.2d 942, 955–57 (2nd Cir.1980) are not limited to oral misinformation. However, we do not have to decide whether Mrs. McDonald was entitled to prevail on her social security claim; it is enough that the government had a solid basis for resisting it.

■ Where the district court went astray in this case was in attaching significance to the government's failing to file a timely motion for summary judgment (or to request an extension of time for doing so) and to pursue its appeal. It was not the purpose of the Equal Access to Justice Act to penalize the government for committing procedural defaults that help the private parties who are the Act's intended beneficiaries. Mrs. McDonald would be worse off if the government had pursued its district court remedies assiduously. Its default enabled her to collect a sum of money that while small was probably more—$652.50 more—than she was entitled to under the Social Security Act, and in any event she got it sooner and at less legal expense than if the government had fought harder. The question under the Equal Access to Justice Act is not whether the government has fought tooth and nail but whether it was proceeding on the basis of a solid legal claim or defense, which it was in this case.

The judgment is reversed with directions to vacate the award of attorney's fees and dismiss the fee application. No costs in this court.