831 F.2d 931
 Haskell Levi CHAPOOSE, as Guardian Ad Litem for and on
behalf of his minor children, to-wit: Shaun Thomas
Chapoose, JaNae Lyn Chapoose, Dixon Levi Chapoose, Michelle
Quitta Chapoose; and Connor Charles Chapoose; Dorthea Unca
Sam Garcia, as Guardian Ad Litem for and on behalf of her
minor children, to-wit: Maureen Garcia, Murita Garcia,
Phillipe Theodore Garcia, and Lora Lynn Garcia, who are
minors, and Johnnie Chris Garcia, who is now an adult;
Marietta Chapoose Reed, as mother of Ina Charlene Reed and
Lori Ann Reed, who are now adults; and Raymond Wissiup, as
Guardian Ad Litem for and in behalf of his minor children,
to-wit: Raylene Jamie Wissiup, Raymond Wissiup II, and
Cynyella Monda Rae Wissiup, et al., Plaintiffs-Appellants,
v.
Donald P. HODEL, as Secretary of the Interior and Ken Smith,
as Assistant Secretary of the Interior; John Fritz, as
Deputy Assistant Secretary-Indian Affairs (operations);
and/or their successors to office, Defendants-Appellees.
 No. 85-2078.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 22, 1987.
 
 George E. Mangan (Machelle Fitzgerald and Herbert Wm. Gillespie with him on the briefs), Roosevelt, Utah, for plaintiffs-appellants.
 Edward J. Shawaker, Dept. of Justice, Washington, D.C. (David C. Shilton, Dept. of Justice, Washington, D.C.; F. Henry Habicht II, Asst. Atty. Gen., Brent D. Ward, U.S. Atty., and Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, with him on the brief), for defendants-appellees.
 Before SEYMOUR, McWILLIAMS, and MOORE, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Haskell Levi Chapoose and eighteen other Ute Indian children (the Children) appeal the dismissal of their claims for violations of their civil rights and for attorney fees. Appellants' complaint was addressed in sequential motions for summary judgment. In its first order, the district court dismissed the Children's civil rights and Bivens claims for damages and reduced the central issue to the resolution of whether the action of the Secretary of the Interior denying the Children membership in the Ute Indian Tribe is arbitrary, capricious, or otherwise contrary to law. In a lengthy opinion, the district court held that the Secretary's interpretation of the 1954 Ute Partition and Termination Act, as amended in 1956, 25 U.S.C. Sec. 677d (the Act), is plainly erroneous and cannot stand. Chapoose v. Clark, 607 F.Supp. 1027 (D.Utah 1985). The court ordered the Secretary's disapproval of the subject enrollment ordinance set aside and the case remanded to the Secretary of the Interior to proceed as indicated in the order. The Children do not challenge that holding and the nature of the relief it provided. In this appeal, the Children maintain the court erred in dismissing their civil rights claims, limiting discovery to the administrative record, and granting qualified immunity to the named agency officials. The Children seek reversal of these decisions to permit them to engage in more extensive discovery which they believe will establish the violation of their civil rights. We have reviewed the record and the district court's orders. While we find no error in the court's conclusions on the civil rights claims, we are compelled to remand the action for the district court to conduct a factual inquiry on the Children's claim for attorney fees in accordance with this opinion.
 
 I. BACKGROUND
 
 2
 This case began in 1977 when the Tribal Business Committee[1] of the Ute and Uintah Reservation denied the Children enrollment into the Ute Indian Tribe (the Tribe) because the Children did not possess 5/8ths Ute Indian blood. The Children, who represent four family groups residing on the reservation, then challenged the 1958 Tribal Enrollment Ordinance No. 0-58-1 which had originally set the 5/8ths blood quantum requirement.[2] Filing suit in the Ute Tribal Court (the Tribal Court) pursuant to the Indian Civil Rights Act, 25 U.S.C. Secs. 1301 et seq., the Children alleged that their right to tribal membership was fully established under the Ute Tribal Constitution art. II, Sec. 1(b).[3] In 1977, the Tribal Court held that the Ute Tribal Constitution is the primary law of the reservation, preempting any conflicting or contrary ordinance. In 1981, the Ute Tribal Appellate Court affirmed looking both to the Act and its 1956 amendment[4] and to the Tribal Constitution. Subsequently, the Tribal Appellate Court reheard the matter and affirmed, directing the Tribal Court enter a permanent injunction enjoining the Business Committee from denying the Children membership and ordering the Business Committee to enroll the Children and apply to the Secretary of the Interior for the appropriate payments out of trust property.
 
 
 3
 On January 14, 1982, the Tribal Business Committee enacted Res. No. 82-05 declaring that the Act is the controlling authority on the blood-quantum formula for enrollment and requesting the Secretary approve the enrollment of the Children. Mr. L.W. Collier, Jr., Superintendent of the Uintah and Ouray Agency, Bureau of Indian Affairs, Department of the Interior (the Agency), refused to enroll the Children on the ground that the Act supersedes existing requirements and sets the enrollment criteria for the Tribe. The Agency submitted that in addition to being descendants of ancestors listed on the 1956 Final Roll of the Tribe, the Children must possess "a minimum of federally recognized Indian blood in excess of one-half, of which at least one-half thereof must be Indian blood of the Uintah and Ouray Reservation." The Children appealed the decision to Mr. Kenneth Smith, the Assistant Secretary of Indian Affairs, who agreed that the Act supersedes the Tribe's power to determine and control enrollment. Thus, Mr. Smith concluded, any ordinances the Tribe might pass on the subject of enrollment would be only procedural in nature.
 
 
 4
 The Children filed suit in the United States District Court for the District of Utah naming as defendants, Secretary of the Interior, James Watt; Assistant Secretary of the Interior, Ken Smith; and Deputy Assistant Secretary of Indian Affairs, John Fritz; and/or their successors in office (the Secretary collectively). In their complaint the Children alleged that in denying their enrollment in the Tribe, the Secretary had, "in derogation of their liberty, property and other valuable interests," denied them due process of law, valuable civil rights, and the equal protection of the law. The Children prayed for the court to issue "an injunction in the form of a Writ of Mandamus" directing the Secretary to approve the Tribal Business Committee's enrollment ordinance. In addition, for each of these claims, the Children sought substantial money and punitive damages for the Secretary's wanton disregard of plaintiffs' rights. Finally, the Children claimed entitlement to compensation for attorney fees pursuant to "42 U.S.C. Sec. 1983 of the Civil Rights Act, and/or any and all other applicable statutes and judicial precedents."
 
 
 5
 In its first order, the district court dismissed the Children's Sec. 1983 claim for lack of jurisdiction, no allegation having been made that the defendants acted under color of state law. In so doing, the court rejected the Children's contention that an Indian tribe is analogous to a "territory" under the language of 42 U.S.C. Sec. 1983. In dismissing the Children's Bivens claim, the court held the complaint failed to state the constitutional right from which this claim must derive. The equal protection challenge was similarly ill-fated. Citing Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the court held that the blood quantum requirement relied on by the Secretary had a rational basis and, thus, was not an unconstitutional classification. Finally, even if the Secretary's interpretation of 25 U.S.C. Sec. 677d was incorrect, the court held, he is entitled to qualified immunity for his action. With these "procedural matters disposed of," the district court ordered the parties to address the merits of the question whether the Secretary's refusal to approve the Children's enrollment is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 706(2)(A).
 
 
 6
 In a second order, the district court set forth the background of the present action and examined the statutory history of Sec. 677d[5] and its subsequent Agency interpretation. The district court concluded that Congress manifested a clear intent for the Ute Tribe to retain control over its membership. Chapoose v. Clark, 607 F.Supp. at 1028-37. Thus, the Secretary's interpretation of Sec. 677d, the court held, is plainly erroneous and cannot stand. The Children contend that in the light of this holding and the court's finding that "[f]undamental and precious Indian rights are at stake,"[6] we should reverse the district court's dismissal of the civil rights claims in order to permit them to extend discovery beyond the administrative record. The Children's complaint does not support this relief.
 
 II. CIVIL RIGHTS CLAIMS
 
 7
 The Children alleged the Secretary, acting under color of territorial law, violated their civil rights. 42 U.S.C. Sec. 1983. As the district court found, however novel appellants' theory analogizing the Secretary's acting under color of state/territorial law to tribal/territorial law, it is unfounded and specifically rejected in the law. "Indian tribes are not states of the union within the meaning of the Constitution, and the constitutional limitations on states do not apply to tribes." F. Cohen, Handbook of Federal Indian Law, 664-65 (1982 ed.). See, e.g., Wardle v. Ute Indian Tribe, 623 F.2d 670 (10th Cir.1980) (Title VII specifically exempts Indian tribes); Settler v. Lameer, 507 F.2d 231 (9th Cir.1974) (constitutional right to counsel does not apply to Indian tribes). Thus, appellants' attempt to equate tribal action to state or territorial action in order to characterize the Secretary's act is misplaced. Accordingly, the Sec. 1983 claim must fail.
 
 
 8
 Similarly, the Children's Bivens claim and arguments to overcome a Harlow bar of qualified immunity for official conduct are flawed. A Bivens action seeks to impose personal liability and damages on a federal official for the violation of a constitutional right. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This implied right of action "only applies against the individual appellees in their individual capacities." Williamson v. United States Dept. of Agriculture, 815 F.2d 368, 381 (5th Cir.1987). In their complaint, the Children state, "In the event any of the named defendants shall be replaced in office during the pendency of this action, the plaintiffs request that their individual successors be automatically substituted as a party defendant." In naming the individual defendants and their successors in office, the Children have made clear that the onus of their suit is to impose liability on the office or the Agency. As such, it is a suit against the sovereign which is protected by sovereign immunity. Holloman v. Watt, 708 F.2d 1399, 1401-02 (9th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984).
 
 
 9
 We would note in passing that our inquiry into whether the Secretary's acts are protected by that qualified immunity outlined in Harlow is thus foreclosed. "It is well-settled that the immunity to which a public official is entitled depends not on the official's title or agency, but on the nature of the function that the person was performing when taking the actions that provoked the lawsuit." Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103, 1108 (9th Cir.1987) (emphasis added). The qualified immunity the district court believed protected the Secretary's action attaches to the individual and not the office.
 
 III. ATTORNEY FEES
 
 10
 The remaining issue in this appeal is whether the Children are entitled to attorney fees. The district court did not address this issue in either of its two orders. Two months after the second order was filed, the Children moved in the district court for the defendants to show cause and be held in contempt for failing to comply with the court's orders and for attorney fees. At that time, the Children were still not enrolled in the Tribe, and the Secretary protested he had no order from the Business Committee on which to take action.[7] The court agreed with the Secretary's characterization of the impasse and denied the order to show cause and the request for attorney fees.[8]
 
 
 11
 In their brief on appeal, the Children seek reinstatement of their claim for attorney fees under 42 U.S.C. Sec. 1988, 5 U.S.C. Sec. 504, and 28 U.S.C. Sec. 2412(b). After oral argument, the Children submitted supplemental authority to support their claim for fees under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412 (EAJA). The Secretary responded to the supplemental authority, objecting on the grounds that the Children's pleading contained a substantial portion of argument in violation of Fed.R.App.P. 28(j), and the issue was not raised on appeal. Neither contention has merit.
 
 
 12
 While the Children merely reference 28 U.S.C. Sec. 2412(b)[9] in their brief on appeal, we do not believe that their failure to move in the district court for attorney fees under the EAJA prior to filing the appeal or to elaborate on the issue on appeal is fatal to their possible recovery under Sec. 2412(d)(1)(A). While we are satisfied that the Children have not lost their opportunity to move for fees under the EAJA, McDonald v. Schweiker, 726 F.2d 311 (7th Cir.1983),[10] this court is not the proper forum either to address the initial motion or make the necessary factual determinations.
 
 
 13
 Because the district court surmised the Children's fee application was confined to 42 U.S.C. Sec. 1988, no factual inquiry was undertaken to determine whether the Children are "prevailing parties" in the first instance under Sec. 1988 because the court dismissed the civil rights claims. The same inquiry would apply to the EAJA claim although it was not raised initially. In so finding, we acknowledge that the court had scant if any guidance on which to proceed.
 
 
 14
 Ample precedent guides the district court's "pragmatic factual inquiry" to decide whether the Children are entitled to fees under the EAJA. Clark v. Los Angeles, 803 F.2d 987, 989 (9th Cir.1986). A civil rights plaintiff may be a prevailing party for the purpose of an award of attorney fees "if [he] succeed[s] on any significant issue in the litigation which achieves some of the benefits which the parties sought in bringing suit." Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983). The litigant has the burden to demonstrate "a sufficient causal relationship between the lawsuit and the practical outcome realized." Clark v. Los Angeles, 803 F.2d at 989. The same principles apply under the EAJA. The suit must be a "necessary and important factor" in achieving or protecting the benefit at stake. Environmental Defense Fund, Inc. v. EPA, 716 F.2d 915, 919 (D.C.Cir.1983). Moreover, a court should look "to the substance of the litigation" to determine whether an applicant has substantially prevailed in its position. Devine v. Sutermeister, 733 F.2d 892 (Fed.Cir.1984).
 
 
 15
 In substance, the Children sought a declaration of their right to enrollment in the Tribe. While fashioning the relief requested as an injunction in the form of a writ of mandamus, the Children intended the thrust of their action to establish their right to tribal membership. If the Children renew their application for attorney fees under the EAJA to the district court, that court should proceed to conduct the necessary factual inquiry to establish whether the Children are "prevailing parties" under the relevant law and whether the government was "substantially justified" in its action.
 
 
 16
 We, therefore, affirm the district court in dismissing the civil rights claims and remand the case for specific consideration of whether fees are warranted under Sec. 2412(d)(1)(A).
 
 
 
 [1]
 Under the Ute Tribal Constitution, the Tribal Business Committee is the governing body of the Tribe. The Constitution provides that the Tribal Business Committee "shall have the power to promulgate ordinances, subject to review by the Secretary of the Interior, covering future membership and the adoption of new members."
 
 
 [2]
 The ordinance provided in part: "Hereinafter no person born subsequent to the adoption of this ordinance shall be enrolled in the Ute Indian Tribe of the Uintah and Ouray Reservation unless the degree of Ute Indian blood of such person is five-eights ( 5/8) or more."
 After the Tribal Court ruled, the Business Committee revised the ordinance adding that no person may be enrolled by order of the Business Committee or Tribal Court, unless the 5/8ths blood quantum requirement was satisfied.
 
 
 [3]
 This section provides:
 Section 1. The membership of the Ute Indian Tribe of the Uintah and Ouray Reservation shall consist as follows:
 ....
 (b) All children born to any member of the Ute Indian Tribe of the Uintah and Ouray Reservation who is a resident of the Reservation at the time of the birth of said children.
 
 
 [4]
 The 1956 amendment to the Act states: "New membership in the tribe shall thereafter be controlled and determined by the constitution and bylaws of the tribe and ordinances enacted thereunder."
 
 
 [5]
 25 U.S.C. Sec. 677d provides:
 Effective on the date of publication of the final rolls as provided in section 677g of this title the tribe shall thereafter consist exclusively of full-blood members. Mixed-blood members shall have no interest therein except as otherwise provided in this subchapter. New membership in the tribe shall thereafter be controlled and determined by the constitution and bylaws of the tribe and ordinances enacted thereunder.
 This court has previously examined the 1954 Act and although relating to different factual circumstances, these discussions of the Act amplify our understanding of the court's order. See United States v. Felter, 752 F.2d 1505, 1506-07 (10th Cir.1985); Reyos v. United States, 431 F.2d 1337 (10th Cir.1970), rev'd in part on other grounds sub nom. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Ute Indian Tribe of the Uintah and Ouray Reservation v. Probst, 428 F.2d 491, 495-96 (10th Cir.), cert. denied, 400 U.S. 926, 927, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970).
 
 
 [6]
 Addressing the Secretary's argument that no right exists for the court to protect because this case is only about those who want to become Indians, not about Indians, the court responded, "The only thing of value a full-blood tribal member can pass on to his children is the right to become a tribal member." Chapoose v. Clark, 607 F.Supp. 1027, 1036 (D.Utah 1985)
 
 
 [7]
 In its brief, the government states that after the district court issued its final decision, the Business Committee passed two ordinances. The first ordinance withdrew the Tribal Court's jurisdiction over enrollment matters and required its review of Tribal and Appellate Court decisions on enrollment. The second ordinance repealed the prior ordinance which requested the Agency enroll the Children. Thus, the Secretary explains he had no ordinance to approve. The Children contended this characterization overlooked the Agency's alleged "accommodation" of the Business Committee and suggestion to the Business Committee to hold a constitutional election to change the enrollment requirements
 
 
 [8]
 At the same time, the district court recognized the "tremendous amount" of work the Children's attorney had done but found no basis for the award. The court stated, "I don't see any basis for it. He will have to get that from them or have the Court of Appeals tell me something there. I just--I'm going to let this case go up on appeal on the status that it is on now. I'm sure it is going there."
 
 
 [9]
 28 U.S.C. Sec. 2412(d)(1)(A) is the basis for the Children's possible recovery under the Equal Access to Justice Act. This section states:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 [10]
 In McDonald v. Schweiker, 726 F.2d 311 (7th Cir.1983), plaintiff moved for attorney fees under the EAJA after the government had moved to dismiss the appeal without filing an appeal brief. The government's motion was granted. Within thirty days after the mandate was issued, the plaintiff filed a motion for attorney fees in the district court. The district court granted the motion, awarding plaintiff $3,000 in fees and $71 in costs. The government contended the plaintiff's motion was untimely because it was filed more than thirty days after final judgment in the district court. 28 U.S.C. Sec. 2412(d)(1)(B). The Seventh Circuit disagreed holding that a "final judgment" as used in the EAJA is one that is no longer contestable through the appellate process. This approach avoids the "exquisite dilemma" of either a plaintiff's foregoing a fee application to preserve his successful judgment or jeopardizing the judgment "in the hope of getting a reasonable fee" for the work. Id. at 315. "[Congress] wanted to make it easier, not harder, for people of limited means to collect their small claims from the government." Id