**YOUNGDALE & SONS CONSTRUCTION CO., INC., etc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 553–88C.**

United States Court of Federal Claims.

May 5, 1994.

---

**168**

Larry E. Robinson, Los Angeles, CA, atty. of record, for plaintiff.

Steven L. Schooner, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

This matter comes before the United States Court of Federal Claims (COFC)[1] in connection with two show cause orders issued by this court on December 7, 1993, and February 17, 1994, regarding plaintiff's application for attorneys' fees and expenses under the Equal Access to Justice Act (EAJA).[2] The *timing* of plaintiff's initial filing in relation to the final judgment in the action, and

its subsequent December 6, 1993, motion for enlargement of time to supplement its application, gave the court reason to question whether it has proper subject matter jurisdiction to consider plaintiff's claim in view of the 30–day rule. The parties, therefore, were ordered on two occasions to brief the issue as to whether plaintiff's application for attorneys' fees and expenses was timely filed and is properly before us.

Because the court must address jurisdictional issues, *sua sponte*, when there is a question, it is our obligation here, given the circumstances surrounding the initial filing, to ascertain whether plaintiff has satisfied the jurisdictional prerequisites imposed by the EAJA. The specific question the court must consider, therefore, is—whether plaintiff filed its EAJA application in a timely manner, pursuant to the filing provision, § 2412(d)(1)(B). That subsection provides as follows:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application. . . .

If the court finds that plaintiff failed to file its application within the *statutorily-allotted time*, then plaintiff's EAJA claim must be dismissed for lack of subject matter jurisdiction. On the other hand, if plaintiff filed a complete application within thirty (30) days of "final judgment," as contemplated by the statute, the requisite indicia of jurisdiction will be evident, and the court will consider the claim on its merits. After reviewing the pertinent facts, the parties' briefs, and the applicable law, the court finds that plaintiff did in fact file a timely and complete application *within thirty (30) days after final judgment.* We, therefore, have jurisdiction to proceed on the merits of plaintiff's claim.

### I. *Background Facts*

Plaintiff was awarded $343,774.00 and related interest on January 15, 1993, by this court's opinion, following a trial on the mer-

---

1. The predecessor United States Claims Court was renamed the United States Court of Federal Claims pursuant to the enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

2. 28 U.S.C. § 2412 *et seq.*

its. *See Youngdale & Sons Construction Co. v. United States,* 27 Fed.Cl. 516 (1993). Pursuant to said opinion, judgment was entered in this court on January 26, 1993. Thereafter, plaintiff filed a timely notice of appeal in the Court of Appeals for the Federal Circuit (CAFC) on March 23, 1993, but was thereafter dismissed on September 24, 1993, for failure to prosecute (*i.e.,* for failure to file its brief as required). On October 20, 1993, and within 30 days of the CAFC dismissal, *the Clerk of the CAFC* received from plaintiff a document entitled "Application For Attorneys' Fees And Expenses." The CAFC Clerk's office, on its own initiative, telephoned plaintiff's attorney to explain that the application had been misaddressed[3] (Affidavit of Alice Aubel, Pltf's Response to Show Cause Order). At the request of plaintiff's attorney's secretary, Ms. Aubel, the CAFC Clerk's office agreed to forward plaintiff's application to the Clerk of the Court of Federal Claims, where it originally should have been sent. *See* letter dated November 19, 1993, by which the Application For Attorneys' Fees was forwarded to the Court of Federal Claims.[4] We observe a discrepancy in the facts in that Ms. Aubel in her February 25, 1994, declaration noted that she asked the clerk at the CAFC "what to do and she said that she could reroute it to the Court of Federal Claims." .

An examination of the contents of plaintiff's initial filing on October 20, 1993, reveals the following:

   (a) With respect to the transmittal letter—

     (i) it was addressed to the "Clerk of the Court, U.S. Court of Appeals Federal Circuit";

     (ii) Room 401;

     (iii) 717 Madison Place, N.W.; and

     (iv) Case No. 553–88C (*i.e.* a COFC docket number);

   (b) With respect to the Application for Attorneys' Fees and Expenses—

     (i) the captioned court was correctly noted—"In The United States Court of Federal Claims"; and;

     (ii) the case docket number was 553–88C, the correct COFC docket number; and

   (c) The plaintiff neglected to include in said application—

     (i) a definitive statement of the amount claimed;

     (ii) an itemized statement from an attorney or expert witness averring the actual time expended and the rate at which fees are to be computed;

     (iii) the Appendix E form—Rule 81(e); and

     (iv) the required oath—Rule 81(e).

Plaintiff admits the deficiencies in its "preliminary statement" in its October 20, 1993 Application for Attorneys' Fees and Expenses, which reads, in pertinent part, as follows:

> This application is being filed in order to preserve Youngdale's rights under the Equal Access to Justice Act in the event the settlement is not finalized. For this reason Youngdale does not attach the backup information in support of this application as set forth in the application but will provide such information expeditiously in the event settlement is not approved.

On December 6, 1993, more than 70 days after the September 24, 1993, dismissal of its appeal by the CAFC, plaintiff filed a Motion For Enlargement of Time that, if granted, would allegedly allow it to file the additional "backup information." In response to plaintiff's motion, this court, on December 7, 1993, ordered the parties to show cause how and to

---

**3.** The Court of Federal Claims and the Court of Appeals for the Federal Circuit reside on different floors in the same building. The courts, however, operate in utter independence from each other. Filings intended to reach the Federal Circuit must be addressed to the attention of the Federal Circuit. Filings intended to reach the Court of Federal Claims will not reach that court unless so directed. That a court employee contacted a party about a misaddressed piece of mail is purely fortuitous.

**4.** The letter to David Lampen, Clerk of the Court of Federal Claims, dated November 19, 1993, from the CAFC Clerk's office, establishes that the earliest plaintiff's application was transferred from the Federal Circuit and *received and filed* in the Court of Federal Claims was on said date. *See* plaintiff's Motion for Enlargement of Time.

what extent 28 U.S.C. § 2412(d)(1)(B) and Rule 81(e) had been complied with. On January 3, 1994, this court received plaintiff's completed EAJA application.[5] That submission included, as required and which were omitted in the original filing, a statement of the amount claimed, an Appendix E form, an itemization of fees and expenses, and the required declaration under oath. On February 17, 1994, this court issued a second show cause order, again directing the parties to *specifically* address the issue—whether the EAJA application was filed in a timely manner, as well as whether the jurisdictional requisites were duly met. Having, *sua sponte*, generated the present procedural posture of the case, we now turn to the issue—whether this court has jurisdiction to entertain plaintiff's EAJA application.

## II. *Analysis*

Before this court can decide whether plaintiff's December 6, 1993, Motion For Enlargement Of Time is appropriate, we must, of course, be certain that all jurisdictional prerequisites contained in the controlling statute have been met, and that the matter is properly before us. It is well settled that federal courts, even if not raised by either party, must, *sua sponte*, if necessary, determine whether they have subject matter jurisdiction over their cases. *Trienies v. Sunshine Mining Co.*, 308 U.S. 66, 70, 60 S.Ct. 44, 47, 84 L.Ed. 85 (1939); *Mansfield, Coldwater & Lake Michigan Ry v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *Hambsch v. United States*, 857 F.2d 763, 765 (Fed.Cir. 1988), *cert. denied*, 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989); *Miller v. United States*, 29 Fed.Cl. 107 (1993). We begin, therefore, by examining the filing provision of the EAJA, § 2412(d)(1)(B), which is dispositive of whether plaintiff's claim for attorneys' fees and expenses is jurisdictionally deficient.

The first step in evaluating timeliness is, of course, to determine precisely the last day plaintiff could have filed a timely EAJA ap-

plication for attorneys' fees as provided in the statute. The second step, of course, is to determine, based on the facts presented, whether plaintiff in fact filed a complete application before the established filing deadline.

### A. Determination of EAJA Filing Deadline

Section 2412(d)(1)(B) provides that "A party seeking an award of fees and other expenses *shall, within thirty days of final judgment in the action, submit to the court* an application...." (emphasis added). The related § 2412(d)(2)(G) defines final judgment as "a judgment that is final and not appealable, and includes an order of settlement."

Defendant contends that this final judgment occurred on September 24, 1993, when the CAFC dismissed Youngdale's appeal for failure to prosecute. Therefore, defendant argues, plaintiff had through October 24, 1993, *i.e.*, thirty (30) days after dismissal, in which to file a complete application. In response, plaintiff does not directly assert a specific filing deadline date in its briefs, but instead baldly argues that it filed an EAJA application *on October 20, 1993*, and that that application was timely and sufficient for the purpose of establishing jurisdiction over its EAJA claim. The court, however, is neither satisfied with the averment, on the one hand, that judgment became final upon the CAFC's dismissal on September 24, 1993, nor, on the other hand, that plaintiff submitted a complete and efficacious EAJA application on October 20, 1993. What follows, given the foregoing, is the court's analysis of *when* final judgment, as understood by the filing provision of the EAJA, occurred.[6]

The Supreme Court in *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), stated that—"The 30–day EAJA clock begins to run *after the time to appeal that final judgment has expired.*" *Id.* 501 U.S. at 96, 111 S.Ct. at 2162 (emphasis added). The opinion in *Melkonyan* set-

---

5. Plaintiff entitled this filing "(Amended) Application For Attorneys' Fees And Expenses."

6. Plaintiff's briefs were, ironically enough, singularly unhelpful in edifying the court on the issues, or providing even a modicum of insight on the matter in which it ultimately prevailed.

tled a split in the circuit courts over whether the limitations period for EAJA claims begins at the conclusion of the entire litigation process, or at the time the trial court enters judgment. The Ninth Circuit in *McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983), held that "a request for attorneys' fees under subsection (d) is untimely if filed more than 30 days after the district court has entered judgment." In doing so, the Ninth Circuit rejected the plaintiff's (McQuiston's) position, who relied on the district court's opinion *McDonald v. Schweiker*, 551 F.Supp. 327, 329 (N.D.Ind.1982), stating that, "We reject McQuiston's contention that the 30–day requirement of subsection (d) means that an application must be filed within 30 days of the expiration of the time to appeal or within 30 days of terminating action in the court of last resort." *McQuiston*, at 1085. The Seventh Circuit in *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983), however, was not persuaded by the holding in *McQuiston*, i.e., the time runs 30 days after the district court's judgment, reasoning that, in light of the fact that the claimant might seek to recover fees for the performance of appellate work, "[i]t makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings...." 726 F.2d at 314. "[F]inal judgment in section 2412(d)(1)(B) means final judgment of the court of appeals or the Supreme Court...." *Id.* at 316.

In holding that the limitations period includes the time to appeal, the Supreme Court adopted the position set forth in *McDonald* and rejected the Ninth Circuit's position in *McQuiston*. The court relied on the fact that in 1984, "Congress responded to the split in the federal courts by explicitly adopting and ratifying the *McDonald* approach."[7] Also important to the court's reasoning was the 1985 amendment to § 2412, two years after *McDonald* and *McQuiston*, which specifically defined "final judgment" as "final and not appealable."[8]

From this court's perspective, the legitimacy of the "*McDonald* approach" rests on four rationales advanced in *McDonald* and *Taylor v. United States*, 749 F.2d 171 (3d Cir.1984), a Third Circuit decision adopting the *McDonald* approach one year later. These rationales for why the period for taking an appeal should be included within the EAJA limitations period in § 2412(d)(1)(B) are, as distilled by the court, as follows:

(1) The *McDonald* approach "avoids both unnecessary fragmentation of fee petitions and the waste of judicial resources that would be caused by filing petitions for fees in cases that are ultimately reversed or remanded.... moreover, EAJA fees are available for appellate as well as trial proceedings." *Taylor*, at 173;

(2) "The General Accounting Office will not approve payment of an EAJA claim until all appeals have run." *Id.*, n. 4. (citing *McDonald*);

(3) Congress did not intend to put attorneys in the "exquisite dilemma" of having to decide immediately after district court judgment whether or not to file an EAJA application, which, if filed, might provoke a government appeal and endanger the client's award. *McDonald*, at 315; and

(4) The court cannot ignore Congress' intent when it clearly stated that "[t]he EAJA allows a prevailing party to file a fee petition within 30 days of the final disposition of a case on the merits, i.e., when a party's right to appeal the order has lapsed." *Taylor*, at 174 (quoting S.Rep. No. 98–586, 98th Congress, 2d Sess. 16 (1988)).

From all of the foregoing rationales, which were adopted by incorporation in *Melkonyan*, it is clear beyond cavil that final judgment, as intended and understood by § 2412(d)(1)(B), and the start of the 30–day limitations period, do not occur until the inclusive time to appeal has expired.

▮ Applying this precedent to the case at bar, the court notes that plaintiff was award-

**7.** *See* S.Rep. No. 98–586, 98th Congress, 2d Sess. 16. ("The Committee believes that the interpretation of the court in [*McDonald*] is the correct one"); *see* H.R.Rep. No. 98–992, 98th Congress, 2d Sess. 14. ("The term 'final judgment' has been clarified to mean a judgment the time to appeal which has expired for all parties").

**8.** 28 U.S.C. § 2412(d)(2)(G).

ed judgment on January 15, 1993. The judgment was then entered on January 26, 1993. Plaintiff filed a notice of appeal to the CAFC on March 22, 1993, and said appeal was dismissed for failure to prosecute on September 24, 1993. While plaintiff may not possess the right of direct appeal to the Supreme Court,[9] plaintiff has the right, under Supreme Court Rule 13 and 28 U.S.C. § 2101(c), to petition for writ of certiorari within 90 days of the dismissal issued by the CAFC. Rule 13 provides, in relevant part, as follows:

> A petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort, a United States court of appeals, or the United States Court of Military Appeals shall be deemed in time when it is filed with the Clerk of this Court within 90 days after the entry of the judgment.

28 U.S.C. § 2101(c) provides, in similar fashion, as follows:

> Any other appeal or any writ of certiorari intended to bring any judgment or decree in an civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within 90 days after the entry of such judgment or decree. A justice of the Supreme Court, for good cause shown, may extend the time for applying for a writ of certiorari for a period not exceeding sixty days.

Plaintiff, then, after dismissal by the CAFC on September 24, 1993, had until December 23, 1993, to petition the Supreme Court for a writ of certiorari. According to § 2412(d)(2)(G), final judgment is final when it is not appealable. And the Supreme Court in *Melkonyan* explained that the 30–day limitations period begins to run after the time to appeal has expired. In the present case, plaintiff's 30–day period began to run at the earliest on December 23, 1993, the last day under the 90–day rule in which it could have filed a petition for review in the Supreme Court, and expired on January 22, 1994, 30 days later.

Defendant contends that, under the EAJA, the limitations period does not include the 90 days plaintiff has to file a petition for a writ of certiorari for review of its dismissal by the CAFC. While defendant agrees that the courts have recognized that final judgment does not occur until after the litigation process is exhausted, it offers four reasons why this plaintiff's 30–day limitations period began immediately after dismissal, *i.e.,* on September 24, 1993. Those reasons, as the court discerns them, are as follows:

1. Plaintiff had no intention of petitioning for writ of certiorari for review of its CAFC dismissal;

2. The only issue before the Supreme Court would have been plaintiff's right to reinstatement in the CAFC;

3. No reported case has held that final judgment, as contemplated under § 2412(d)(2)(G), occurs at the conclusion of the time for appeal when the appeal is from a dismissal based on the appellant's failure to prosecute; and

4. No reported case has held that final judgment, as contemplated under § 2412(d)(2)(G), occurs at the conclusion of the time for appeal when the appellant can take appeal only as a matter of judicial discretion, and not by law as a matter of right.

The court will address each concern *seriatim:*

1. Plaintiff had no intention of petitioning for a writ of certiorari for review of the CAFC dismissal.

Unless defendant is demonstrably privy to the most inner thoughts of plaintiff and plaintiff's counsel, defendant presumably bases this contention solely on the fact that plaintiff was dismissed for failure to prosecute, and in hindsight that plaintiff did not, in fact, intend to seek certiorari. However, plaintiff retains the absolute right to file its petition for a writ of certiorari for 90 days after the entry of judgment by the CAFC, notwithstanding its intentions during that period. Furthermore, the EAJA itself does not

---

9. *See* 28 U.S.C. § 2101(a) and 28 U.S.C. § 1253 as instances where a party may have a right of direct appeal to the Supreme Court.

presume to differentiate between appellants who exhibit an intention to file for certiorari, those who are silent, and those who manifest a lack of intention to appeal. The fact of the matter is, until the 90–day period expires, parties may change their minds and seek a review. Defendant's contention that a plaintiff, when dismissed for failure to prosecute, must file its EAJA application within 30 days after that dismissal and before the time to appeal the dismissal expires, would inevitably lead to the unnecessary fragmentation of fee petitions and the waste of judicial resources prior courts have sought to avoid. *See, e.g., Taylor,* 749 F.2d at 173.

2. The only issue before the Supreme Court would have been plaintiff's right to reinstatement in the CAFC.

Defendant basically argues that because plaintiff's appeal, at best, would result only in reinstatement, the EAJA should not recognize it as a legitimate appeal. The EAJA, however, recognizes and offers recovery of fees for appeal work without regard to whether the appellant is seeking reinstatement or something seemingly more significant, such as reversal of a prior decision.

The primary purpose of the EAJA is to ensure that private parties will not be deterred from seeking review of, or defending against, unjustified governmental action because of the prohibitive cost of litigation. To this end, it has been established that a party may recover fees and costs associated with work done prosecuting or defending an appeal, as well as work done in preparing the fee claim itself. *See Trichilo v. Secretary of Health and Human Services,* 832 F.2d 743, 744 (2d Cir.1987); *United States v. 329.73 Acres, Grenada and Yalobusha Ctys.,* 704 F.2d 800 (5th Cir.1983). In *Trichilo,* the court discusses why private parties must be permitted to recover *all* legitimate attorneys' fees, as follows:

We assume familiarity with our earlier opinion in which we held, in part, that a litigant is entitled to attorney's fees under the Equal Access to Justice Act not only for the successful prosecution of a suit under the act, but also for the time spent preparing and litigating the fee issue itself.

[*Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 707 (2d Cir. 1987)]. As we noted:

Since the purpose of the EAJA is to remove counsel fees as an impediment to challenging unreasonable and unjustified governmental actions, where a governmental action has been shown to have been unjustified, *there should be as little disincentive for plaintiffs to obtain attorney's fees as there is for them to challenge the action itself.*

*Id.* (emphasis added). This reasoning applies equally to the time and effort expended by counsel on appeal. Indeed, this case provides a prime example of the reason why fees such as Trichilo's must be recoverable. He incurred fees of over $10,000 on appeal when the amount in controversy on the original appeal was under $1,000. Were there no possibility of recovering the fees on appeal, counsel might well simply forgo the relatively small amount at issue and not contest the government's position on issues such as those raised by the appeal in this case, which, we note, the government lost.

\*    \*    \*    \*    \*    \*

... In case the law of this circuit is not now clear to the government, we hold that where the government's underlying position is not substantially justified, plaintiff is entitled under the EAJA to recover all attorney's fees and expenses reasonably incurred in connection with the vindication of his rights, including those related to any litigation over fees, and any appeal.

*Trichilo,* 832 F.2d at 744–45. Defendant's position, given the foregoing, that an appeal for review of the CAFC's dismissal is not significant enough to be contemplated within the time plaintiff has to file a claim under § 2412(d), is clearly misguided. This court will not presume to postulate whether or not the basis for plaintiff's appeal would have been meritorious had it filed for a writ of certiorari. That would be a matter for the Supreme Court to decide. The critical fact here is that plaintiff had the right, for 90 days, to seek review of its dismissal in the Supreme Court. And, as long as plaintiff *could* have incurred attorneys' fees for appel-

late work following its dismissal by the CAFC, the prospect of unnecessary fragmentation of fee claims and the waste of judicial resources would continue.[10] Furthermore, as noted by the court in *McDonald*, allowing plaintiff to file for attorneys' fees at the conclusion of all litigation would not prejudice the Government or the Treasury in light of the fact that the General Accounting Office will not approve payment of a claim under the EAJA until all appellate proceedings have ended. *See McDonald*, 726 F.2d at 315.

3. No reported case has held that final judgment, as contemplated under § 2412(d)(2)(G), occurs at the conclusion of the time for appeal when the appeal is from a dismissal based on the appellant's failure to prosecute.

Defendant's argument here is similar to the one set forth above as reason # 2 in that it contends that plaintiff's dismissal for failure to prosecute is an implicit admission that plaintiff has waived an appeal or does not intend to file such. The critical fact, however, from the court's perspective is not the likelihood that plaintiff will take an appeal, but, rather, whether appeal is *at all available* to plaintiff. As long as appeal is available, and reinstatement in the CAFC a possibility, the rationale articulated in *McDonald* and *Taylor*, and adopted in *Melkonyan, see supra*, argues convincingly that in the present case the time allowed by Supreme Court Rule 13 to file a petition for certiorari, on whatever grounds it may be based, must be included within the limitations period for filing an EAJA claim. Until plaintiff's time for appeal runs, it cannot be known whether the judgment is *truly* final and not appealable. If plaintiff chooses to appeal, it should be allowed to wait until the appeal runs its course before filing for attorneys' fees. The court in *Federal Election Commission v. Political Contributions Data*, 995 F.2d 383 (2d Cir.1993), concluded similarly that final judgment is not definitively final, and the 30–day clock for filing EAJA claims does not start to run, until the expiration of the time for appeal. In that case, the issue before the appellate court was whether final judgment occurred at the time the Federal Election Commission ("FEC") informed the prevailing party plaintiff by letter that it would not seek an appeal, or at the expiration of the FEC's time for appeal. The court reasoned as follows:

The contention that the Commission's October 30th letter to counsel for appellant was a "final order" which rendered appellant's fee application untimely was disposed of at oral argument. Commission counsel then unequivocally admitted that, despite counsel's letter, the Commission had retained the absolute right to change its mind and apply for *certiorari* at any time up until the deadline for such an application, namely on November 19, just thirty days before the petition for fees was filed.

*Id.* at 385–86. In the present case, the procedural circumstances surrounding the CAFC's dismissal do not impose the conclusion, as defendant seems to suggest, that plaintiff has "abandoned its right to proceed." (*See* Deft's Brief, p. 6, filed Feb. 28, 1994). Plaintiff clearly retained the absolute right to apply for certiorari up until the expiration of the 90 days allowed under Supreme Court Rule 13 and 28 U.S.C. § 2101(c).

4. No reported case has held that final judgment, as contemplated under 2412(d)(2)(G), occurs at the conclusion of the time for appeal when the appellant can take appeal only as a matter of judicial discretion, and not by law as a matter of right.

Finally, defendant maintains that, while courts agree that the 30–day period for filing an EAJA application begins at the end of the appeal period, courts have extended this reasoning only when appeal can be taken as a matter of right. However, it argues that on the record at bar, plaintiff was not entitled to

---

10. Plaintiff, for instance, could seek fees in connection with the original work done at the trial level, work done in prosecuting its appeal in the CAFC should it be reinstated, work performed in preparing for review before the Supreme Court should the CAFC rule against plaintiff on the merits of its appeal, work done in preparation for each of the various fee claims, and also work done in defense of those fee claims in the event of a government appeal.

appeal as a matter of right,[11] and, should not, therefore, according to defendant, gain the benefit of an additional 90 days to file its EAJA application.

After reviewing the relevant case law, the court has, contrary to defendant's assertion, identified two U.S. Courts of Appeals cases holding that final judgment is not final until the expiration of the time for appeal even when the prospective appellant was not entitled to appeal as a matter of right, but only to file a petition, as in the present case, for a writ of certiorari. The first case, *Taylor v. United States*, 749 F.2d 171 (3d Cir.1984), held that the 30–day limitations period for filing EAJA applications does not begin until the expiration of the time to appeal. The appeal that could have been taken in that case, however, was only as a matter of discretion, not by law as a matter of right. The court ruled, in that connection, as follows:

> Under Supreme Court Rule 20 and 28 U.S.C. 2101(c), the government had ninety days from the date of this Court's decree denying rehearing, July 27, 1983, in which to *file a petition for a writ of certiorari.* The thirty days within which to request fees and expenses under the EAJA would not ordinarily begin to run until *the time in which the government could petition for certiorari had expired.*

*Id.* at 175 (emphasis added). The second case, *Federal Election Commission v. Political Contributions Data*, 995 F.2d 383 (2d Cir.1993), similarly recognized that "[t]he 30–day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." *Id.* at 385 (quoting *Melkonyan*). As in *Taylor*, however, the appeal in *Political Contributions Data* was not a matter of right, but one of discretion. The FEC in that case only had the right to file a petition for a writ of certiorari, yet the court used the appeal deadline as the date when the 30–day EAJA limitations period began to run. *See Political Contributions Data*, at 385–86.

The holdings in the two above-mentioned cases are consistent with the central rationale of the *McDonald* approach. To depart from the *McDonald* approach in cases where appeal is not a matter of right betrays the effort to prevent the inefficient use of judicial resources and unnecessary fragmentation of claims. Defendant has identified no case that refuses to start the 30–day clock *after* the time to appeal because the party's appeal is only a matter of judicial discretion. The intent of Congress on this issue became manifest when it adopted the *McDonald* approach. We do not propose here, against better reason and judicial precedent, to contravene that intent. Final judgment on this record occurs, we are constrained to hold, at the conclusion of all litigation, even though plaintiff's appeal to the Supreme Court is not as a matter of right. As the court sets forth above, plaintiff's 30–day period began to run *on December 23, 1993,* the last day that it could have filed a petition for certiorari in the Supreme Court, and necessarily expired on January 22, 1994, *i.e.,* 30 days later. January 22, 1994, therefore, was *the* last day for plaintiff to file a timely and efficacious EAJA application.

## B. Plaintiff's Compliance With The Filing Deadline

Having established that January 22, 1994, was *the final day* for plaintiff to file its EAJA application and secure proper subject matter jurisdiction before this court, the remaining issue is simply—whether plaintiff did in fact file a *statutorily complete* application on or before that date. The first EAJA filing tendered by plaintiff on October 20, 1993,[12] failed to include the requisite elements necessary to make out a complete and valid application as recognized by the statute. The October 20, 1993 filing failed to include (i) a definitive statement of the amount claimed; (ii) an itemized statement detailing

---

11. Plaintiff's dismissal from the CAFC is subject to any statute granting the right to direct appeal to the Supreme Court. Direct appeal to the U.S. Supreme Court is permitted under 28 U.S.C. § 1253 from an order of a three-judge district court granting or denying an injunction, but those facts are not present here.

12. The court understands that the submission was not forwarded to the Court of Federal Claims until November 19, 1993, nearly a month after its arrival in the CAFC Clerk's office, but does not propose to rule on the actual or equitable date of filing in this court at this time.

work performed by attorneys or expert witnesses, averring the time expended and the fee rate; (iii) the Appendix E form; and (iv) the required oath per Rule 81(e). On January 3, 1994, however, the Court of Federal Claims Clerk's Office received a second submission from plaintiff entitled "(Amended) Application For Attorneys' Fees And Expenses" that contained the items required by § 2412(d)(1)(B) and Rule 81(e) that were conspicuously absent from plaintiff's original submission.[13] The court finds, therefore, that plaintiff's January 3, 1994 submission was filed before the January 22, 1994, jurisdictional filing deadline, and in fact contained the requisite information to qualify said application as a proper EAJA application.

### III. *Conclusion*

For all of the foregoing reasons, the court is now satisfied that it has proper subject matter jurisdiction to examine plaintiff's EAJA claim on the merits. Plaintiff's Motion For Enlargement of Time, on this record, was filed prematurely, and is hereby DENIED AS MOOT. Defendant shall file its response to plaintiff's EAJA application within 28 days of the date of this order, *i.e.*, on or before June 2, 1994. Plaintiff shall file its reply thereto within 14 days after the date of service.

The court hereby stays a ruling on Defendant's Motion (filed on January 10, 1994) To Strike Exhibits 5–10 of plaintiff's January 4, 1994 reply, until a later date.

IT IS SO ORDERED.

---

**13.** Plaintiff's January 3, 1994 submission included—

    (i) a definitive statement of the amount claimed;

    (ii) an itemized statement from an attorney or expert witness averring the actual time expended and the rate fees to be computed;

    (iii) the Appendix E form—Rule 81(e); and

    (iv) the required oath—Rule 81(e).