Victor A. **GONZALEZ**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 97–526C.

United States Court of Federal Claims.

Sept. 29, 1999.

---

Brian Broyles, Department of the Army, Office of the Judge Advocate General, Arlington, Virginia, of counsel.

## *OPINION*

MARGOLIS, Judge.

This military pay case is currently before the court on plaintiff's motion for attorney fees and expenses under the Equal Access to Justice Act ("EAJA" or the "Act"), 28 U.S.C. 2412(b), (d). The government argues that plaintiff is not entitled to an award of attorney fees and expenses because (1) plaintiff filed his EAJA petition prematurely, (2) plaintiff failed to adequately support his claimed fees and expenses with contemporaneous billing records, and (3) the government's position in the underlying litigation was substantially justified. After carefully considering the arguments presented by the parties in their briefs,[1] the court concludes that plaintiff's EAJA petition was timely filed and properly supported, and that the government's overall position throughout the underlying dispute was not substantially justified. Plaintiff's petition for attorney fees and expenses is therefore granted.

## FACTS

Victor A. Gonzalez ("plaintiff"), an officer in the Active Guard/Reserve ("AGR") program of the United States Army, tested positive for cocaine use in late 1993. In March 1994, the Army conducted a pretrial investigation under Article 32 of the Uniform Code of Military Justice, 10 U.S.C. § 832, to determine whether probable cause existed to refer the charges for trial by general court-martial. The charges were referred for trial by court-martial; however, the trial court subsequently dismissed the case with prejudice on procedural grounds. Thereafter, plaintiff's commanding officer, Colonel Montie Hess, issued a Memorandum of Reprimand ("MOR") to plaintiff for his alleged unlawful use of cocaine. Plaintiff submitted a written rebuttal statement to Colonel Hess on October 15, 1994 in which plaintiff maintained

John A. Wickham, Evergreen, Colorado, for plaintiff.

David C. Hoffman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director, for defendant. Ltc. Terry L. Elling and Maj.

---

1. The parties stipulated, and the court agrees, that oral argument was unnecessary for purposes of ruling on plaintiff's motion for attorney fees and expenses.

that he did not use cocaine and questioned the drug testing procedures. Colonel Hess then prepared an endorsement to the MOR for Colonel Summerlin, recommending that the MOR be filed permanently in plaintiff's Official Military Personnel File. The MOR was filed in plaintiff's Official Military Personnel File on November 1, 1994.

Plaintiff sought the removal of the MOR from his Official Military Personnel File by appealing to the Department of the Army Suitability Evaluation Board ("DASEB"). Plaintiff was given an opportunity to submit a written statement to the DASEB, but was not permitted to appear before the Board. In addition to questioning the drug testing procedures, plaintiff argued that Colonel Hess's endorsement to the MOR relied on information to which plaintiff did not have an opportunity to respond. The DASEB denied plaintiff's appeal.

In June 1995, the Department of the Army Active Duty Board ("DAADB") concluded that, pursuant to paragraph 3–49 of Army Regulation 635–100, plaintiff should be released from active duty for misconduct with a General Discharge. The Deputy Assistant Secretary of the Army affirmed the DAADB's decision.

Plaintiff appealed the DAADB's decision to the Army Board for Correction of Military Records ("ABCMR"). Plaintiff was not permitted to appear before the Board. The ABCMR upheld the decision to discharge plaintiff, and on August 18, 1995, plaintiff was separated from service with a General Discharge.

Plaintiff filed suit in this court on August 4, 1997, seeking removal of the MOR and all references thereto from his personnel records, reinstatement to the Army AGR program, back pay, and allowances. In his cross-motion for judgment on the administrative record, plaintiff contended that his constitutional due process rights were violated when the Army refused to provide him with a hearing at which he could protest the charges against him. Plaintiff further argued that Colonial Hess violated Army regulations by relying, in his MOR endorsement, on information to which plaintiff had no opportunity to respond. In a bench opinion granting plaintiff's cross-motion on the administrative record, the court held that

> the Army impaired Plaintiff's liberty interest in his reputation when it characterized his discharge as general. Because the Plaintiff has vigorously disputed the factual basis for his release, the due process clause of the federal constitution obligates the Army to provide Plaintiff with a hearing prior to his discharge. The Court holds that the Army's failure to provide Plaintiff with such a hearing before discharge was a denial of due process.

Transcript of June 30, 1998 Bench Opinion ("Bench Op.") at 47. The court refrained from ruling on plaintiff's second argument— that the Army violated its regulations by failing to provide plaintiff with an opportunity to comment on information relied upon by Colonel Hess in his endorsement to the MOR—because the ABCMR had not addressed that argument.

By written order dated July 1, 1998, the court ordered the government to restore plaintiff to active duty retroactive to August 18, 1995, and to pay plaintiff all appropriate back pay and benefits to which he was entitled pursuant to law and regulation. The court further ordered that the parties calculate the quantum of back pay and other relief to which plaintiff was entitled and file a joint stipulation of damages with the court. The parties filed the joint stipulation of damages on November 3, 1998, agreeing that plaintiff was entitled to $122,010.46 in back pay and other benefits. Final judgment was entered for plaintiff on January 26, 1999, pursuant to the parties' November 3, 1998 joint stipulation of damages.[2]

On July 30, 1998, after the court ruled from the bench and issued its written order, but prior to the court's entry of final judg-

---

**2.** By order dated May 12, 1999, the court granted the parties' Joint Motion for Relief From Judgment to correct an error in the calculation of plaintiff's back pay. A revised judgment was entered on May 13, 1999, increasing plaintiff's back pay entitlement to $123,823.21. Plaintiff renewed his EAJA petition on June 28, 1999 based on the court's May 13, 1999 revised judgment.

ment in plaintiff's favor, plaintiff filed the instant EAJA petition for attorney fees and expenses in the amount of $16,036.18, plus an appropriate cost-of-living adjustment.

## DISCUSSION

### I. *TIMELINESS OF PLAINTIFF'S EAJA APPLICATION*

EAJA provides in relevant part that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses ...." 28 U.S.C. 2412(d)(1)(B). EAJA defines "final judgment" as "a judgment that is final and not appealable," 28 U.S.C. 2412(d)(2)(G), and, hence, "[t]he 30–day EAJA clock begins to run after the time to appeal [the court's] 'final judgment' has expired." *Melkonyan v. Sullivan,* 501 U.S. 89, 96, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991); *accord Youngdale & Sons Constr. Co. v. United States,* 31 Fed.Cl. 167, 171 (1994). At issue in this case is whether plaintiff's EAJA petition was filed *too early* under the Act. The government contends that plaintiff's EAJA petition must be denied because at the time it was filed on July 30, 1998, the court had not yet entered final judgment in the case, and hence the 30–day limitations period had not yet begun to run. Contrary to the government's position, the court does not find that plaintiff's EAJA petition must be denied solely because it was filed prior to the court's entry of final judgment. Rather, after reviewing EAJA's legislative history and the relevant case law, the court concludes that EAJA's final judgment clause is better viewed as prescribing only a final deadline for the filing of an EAJA petition, not a window within which an EAJA petition must be filed.

EAJA, as originally enacted, did not define the phrase "final judgment." *See* Pub.L. No. 96–481 Title II, § 204(a), 94 Stat. 2327–2329 (1980). Some courts understood "final judgment" to mean the entry of the district court's judgment, notwithstanding any possible appeals. *See, e.g., McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983). Other courts construed "final judgment" to mean the judgment that ends the litigation, "after

all appellate remedies have been either exhausted or ... abandoned." *McDonald v. Schweiker,* 726 F.2d 311, 313 (7th Cir.1983); *accord Massachusetts Union of Public Housing Tenants v. Pierce,* 755 F.2d 177 (D.C.Cir. 1985). In articulating the latter view in *McDonald,* Judge Posner supported the position as follows:

> The legislative history indicates and the government concedes that the 30–day provision in the Act was meant to establish a deadline, not a starting point. [H.R.Rep. No. 96–1418, at 11 (1980)]. The claimant can apply for fees as soon as he has prevailed.... [G]iving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch.

726 F.2d at 314–15.

Congress apparently agreed. When it re-enacted EAJA in 1985, Congress amended the Act to include a definition of "final judgment" consistent with the Judge Posner's definition in *McDonald. See* Pub.L. No. 99–80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985) (codified at 28 U.S.C. § 2412(d)(2)(G)). The House Committee on the Judiciary explained in a Supplemental Report that "[t]his amendment ratifies the approach taken by the courts in *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983), and *Mass. Union Public Housing Tenants v. Pierce,* 755 F.2d 177 (D.C.Cir.1985)." H.R.Rep. No. 99–120(I), at 14 (1985) ("House Report"). Further, the Committee expressly reiterated that "[f]ee petitions may be filed before a 'final judgment'. If the court determines that an award of interim fees is inappropriate the petition should be treated as if it were filed during the thirty-day period following the final decision." *Id.* at 18 n. 26. Thus, this court concludes that Congress did not intend to proscribe EAJA petitions filed prior to the start of the 30–day limitations period. *See Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1495 (11th Cir.1986) ("[S]ince the district court has not entered final judgment, since the thirty-day limit has not begun, and since the time to appeal has not run, the application for attorneys' fees was timely

filed."), *vacated in part on other grounds,* 804 F.2d 1573 (1986); *Cummings v. Sullivan,* 950 F.2d 492, 495 n. 4 (7th Cir.1991) ("No 'final judgment' has actually been entered in this action. Nevertheless, ... we find that Cummings' fee application has been timely filed."); *National Wildlife Federation v. FERC,* 870 F.2d 542, 545 (9th Cir.1989) ("While fees may be granted under EAJA prior to final judgment, a party must win 'some relief on the merits of his claims.'") (emphasis omitted); *Cervantez v. Sullivan,* 739 F.Supp. 517, 519 (E.D.Cal.1990) ("Examination of the legislative history to the 1985 amendments to EAJA reveals strong evidence that Congress intended the 30–day period to represent a final deadline for the filing of fee petitions rather than a fixed window within which such petitions must be filed."), *rev'd on other grounds,* 963 F.2d 229 (9th Cir.1992).

■ Because the 30–day provision does not establish a starting point for the filing of EAJA petitions, an EAJA petition may be timely filed once the party seeking attorney fees has prevailed in the underlying litigation. *See* 28 U.S.C. 2412(d)(1)(A). A plaintiff is the prevailing party where he has received "actual relief on the merits of his claim materially alter[ing] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Neal & Co. v. United States,* 121 F.3d 683, 685 (Fed.Cir.1997) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). In determining if an applicant is a prevailing party, "[a] court should look to the substance of the litigation ... and not merely the technical disposition of the case or motion. In effect, substance should prevail over form." *Devine v. Sutermeister,* 733 F.2d 892, 898 (Fed.Cir.1984) (superceded by statute on other grounds). Consequently, the status of "prevailing party" is not limited to "a victor only after entry of a final judgment following a full trial on the merits." *A. Hirsh, Inc. v. United States,* 948 F.2d 1240, 1245 (Fed.Cir. 1991) (following H.R.Rep. No. 96–1418, at 11).

■ In the instant case, the government does not contest that plaintiff was the pre-vailing party at the time he filed his EAJA petition on July 30, 1998. The court explained in its bench opinion that "the Army Board for Corrections' refusal to grant Plaintiff's request for relief without providing him an adversarial hearing was arbitrary, capricious and contrary to law" and that the court was granting plaintiff's motion for judgment on the administrative record and denying the government's motion for judgment on the administrative record. Bench Op. at 50. The court's subsequent written Order of July 1, 1998(1) restored plaintiff to active duty in the AGR, retroactive to August 18, 1995; (2) awarded plaintiff all appropriate back pay for the period of August 18, 1995 until the date of his reinstatement; (3) awarded plaintiff all additional benefits to which he was entitled pursuant to law and regulation; and (4) required the parties to calculate the amount of back pay and other relief to which plaintiff was entitled as a result of the court's opinion and to file a stipulation of damages with the court by August 31, 1998. Thus, notwithstanding that at the time of plaintiff's EAJA petition the quantum of damages had not been decided and the court had not yet entered final judgment, plaintiff had clearly received actual relief on the merits of his claim that materially altered the legal relationship between the parties. *See TGS Int'l, Inc. v. United States,* 983 F.2d 229, 229 (Fed.Cir.1993) (awarding EAJA fees where "[t]he issue of liability was decided, and this court's remand to the Board for 'determination of quantum ...' did not reopen the question of entitlement, or affect TGS's status as prevailing party"); *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1459, 1468 (Fed.Cir.1986) (in banc) (awarding EAJA fees, notwithstanding a pending remand for calculation and award of back pay); *Haitian Refugee Center,* 791 F.2d at 1495–96 (finding that, despite the court's refusal to enter final judgment, "the plaintiffs have prevailed on the issue of enjoining the Haitian Program as conducted by the INS. Since this issue is central to the case, plaintiffs are entitled to an interim fee award."); *Poole v. Rourke,* 779 F.Supp. 1546, 1561 (E.D.Cal. 1991) (awarding EAJA fees in back pay case after plaintiff prevailed on summary judgment, notwithstanding pending motions to

amend the judgment and transfer the case); *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1225 (9th Cir.1989) (awarding EAJA fees after granting plaintiff declaratory relief, notwithstanding that "the dispute between the parties may continue").

Finally, finding plaintiff's EAJA petition timely in this case is consistent with Congress's admonition that "EAJA not be given an 'overly technical construction ... resulting in the unwarranted denial of fees.'" *Brewer v. American Battle Monuments Comm'n*, 814 F.2d 1564, 1566–67 (Fed.Cir. 1987) (quoting House Report at 18 n.26). As the Federal Circuit explained in *Beta Systems, Inc. v. United States*, 866 F.2d 1404, 1406 (Fed.Cir.1989), "[t]he purpose of the statutory requirement of finality is not to provide a basis for [a] fatal misguess as to when a judgment will be deemed 'final in the action': the purpose is to establish a reasonable procedure, avoiding piecemeal fee requests, yet serving the interest of justice." In the present case, given that the court entered final judgment soon after plaintiff filed his EAJA petition and that the government's appeal period has since expired, the specter of piecemeal fee requests is mitigated and an award of fees is in the interest of justice.

## II. *ADEQUACY OF PLAINTIFF'S ITEMIZED BILLING STATEMENT*

EAJA provides that the party seeking an award of fees must submit to the court an application that "shows ... the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). The government contends that the itemization submitted by plaintiff fails to meet the EAJA requirements because it is a "contrived summary," and "not a contemporaneous record." Def.'s Opp. to Pl.'s Mot. for Attorney Fees at 11. The government's concerns are not well founded.

Plaintiff submitted with its EAJA petition an itemized ledger of legal work performed that identified the time period, specific tasks performed, and hours expended on each itemized portion of the work. The court finds that the sworn documentation submitted by plaintiff is sufficient to allow the court to determine the reasonableness of the charges. *See Naporano Iron and Metal Co. v. United States*, 825 F.2d 403, 404 (Fed.Cir. 1987). Moreover, although contemporaneous time records are not necessarily required, *see TGS Int'l, Inc.*, 983 F.2d at 230 n. 1, plaintiff has supplemented his itemization with original time sheets verifying the information previously submitted. Defendant's objections therefore lack merit.

## III. *SUBSTANTIAL JUSTIFICATION OF GOVERNMENT'S POSITION*

Once a timely fee petition has been filed and the plaintiff demonstrates that it is the prevailing party, attorney fees will be granted "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court explained in *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), that Congress intended "substantially justified" to mean " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." The government bears the burden of demonstrating that its position was substantially justified. *See Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir.1993); *Gavette*, 808 F.2d at 1465–66; *Bailey v. United States*, 721 F.2d 357, 359 (Fed.Cir.1983). The government cannot meet its burden in this case.

The government contends that, in determining if the government's position was substantially justified, "courts evaluate whether the litigation position was reasonable, not the reasonableness of the underlying agency action." Def.'s Opp. to Pl.'s Mot. for Atty Fees at 7 (citing *Spencer v. NLRB*, 712 F.2d 539, 552–53 (D.C.Cir.1983) and *Essex Electro Eng'rs v. United States*, 4 Cl.Ct. 463, 467 (1984), *aff'd* 757 F.2d 247 (Fed.Cir.1985)). Accordingly, the government attempts to demonstrate only that its litigation position was substantially justified; no attempt is made to demonstrate that the agency's un-

derlying action also was substantially justified.

■ It is by now well settled, however, that the phrase "position of the United States" refers not only to the government's position during litigation, but also to the agency's underlying conduct giving rise to the litigation. *See Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995) ("[T]he term 'position of the United States' refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position."); *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991) ([W]hen assessing whether to award attorney fees incurred by a party who has successfully challenged a governmental action in a particular court, the entirety of the conduct of the government is to be viewed, including the action or inaction by the agency prior to litigation."); *PCI/RCI v. United States,* 37 Fed.Cl. 785, 788 (1997) ("[T]he Government must show that its actions were substantially justified throughout the entire dispute, not just the litigation phase."). The contrary precedent relied upon by the government predates the 1985 amendment to EAJA, which explicitly settled this point. *See* Pub.L. 99–80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985) (codified at 28 U.S.C. § 2412(d)(2)(D)) (" '[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based ....").

■ Given that the government makes no attempt in its opposition to plaintiff's EAJA petition to justify the agency's underlying conduct, the court finds that the government has failed to carry its burden of demonstrating that the government's position was substantially justified in law and fact. The record demonstrates that the Army's decision to terminate plaintiff from the Army AGR with a General Discharge prior to an adversarial hearing was not substantially justified. The government proceeded as if plaintiff's General Discharge for cocaine use, accompanied by a discharge certificate denoting "a significant act of misconduct or moral or professional dereliction" and a failure to meet minimum standards of retention, would not be stigmatizing on its face. *See Sofranoff v. United States,* 165 Ct.Cl. 470, 478 (1964); *White v. Secretary of Army,* 878 F.2d 501, 503 (D.C.Cir.1989). The government further failed to perceive the significant difference between the instant situation—in which plaintiff at all times challenged the accuracy of the charges brought against him—and the situation in which a person fully acquiesces to the charges supporting his discharge. *See, e.g., Holley v. United States,* 124 F.3d 1462, 1469–70 (Fed.Cir.1997). As a result, the government grossly underappreciated plaintiff's liberty interest at stake in this case. Finally, the government's belief that the Article 32 hearing, a non-adversarial investigative hearing to determine probable cause, satisfied plaintiff's constitutional right to due process was unsupported by law or fact. In short, after considering the entirety of the government's position, the court concludes that this is a case where unjustifiable government actions forced the plaintiff to vindicate his rights through litigation. EAJA is intended to compensate plaintiffs under just such circumstances.

## IV. *AMOUNT OF ATTORNEY FEES AND EXPENSES*

Plaintiff requests that the court increase the statutory cap of $125 per hour on attorney fees to reflect increases in the cost of living. EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The government raises no objection to plaintiff's request for a cost of living adjustment ("COLA") to its attorney fees.

■ It is within the discretion of the court to grant a COLA to the statutory cap on attorney fees where there has been an increase in the cost of living from the effective date of the statutory cap to the date legal services were rendered. *See Doty,* 71 F.3d at 387; *Chiu,* 948 F.2d at 718–19. The $125 cap became effective in March 1996, *see* Pub.L. No. 104–121 §§ 232(b)(1), 233, 110

Stat. 847, 863–864 (1996), and the cost of living at that time, as measured by the Consumer Price Index for All Urban Consumers ("CPI–U"), is therefore the proper baseline for determining any increase in the cost of living. *See California Marine Cleaning, Inc. v. United States,* 43 Fed.Cl. 724, 734 (1999) ("This new [$125] cap applies to all civil actions commenced on or after the effective date of the 1996 statute, March 29, 1996. Consequently, March 1996 is the proper baseline for calculation of a COLA to the $125 cap.") (citations omitted). Because the CPI–U in every month from April 1996 to July 1998 was greater than the March 1996 baseline, the court finds that the $125 cap should be raised for the legal work performed from April 1996 to July 1998. Plaintiff is not entitled to a COLA for the legal work performed in January and February 1996, because the CPI–U for those months measured less than the March 1996 CPI–U baseline.

The new fee cap for each individual month is determined by raising the $125 cap by that month's respective cost of living increase. *See California Marine Cleaning,* 43 Fed.Cl. at 734.[3] Comparing the baseline CPI–U for March 1996 with the CPI–U for each month from April 1996 to July 1998 results in COLAs of between .39% and 4.82%.[4] Accordingly, plaintiff is entitled to be reimbursed for 126 hours of attorney fees at rates as high as $131.02 per hour ($125 increased by 4.82%), depending on the month in which the services were performed, for a total of $16,150.97. *See supra* note 4. Plaintiff is also entitled to $286.18 for his claimed legal expenses. Plaintiff's total EAJA award for attorney fees and expenses is therefore $16,437.15.

3. The court has simplified this process where necessary by utilizing the mean of the CPI–U over several months. *See Chiu,* 948 F.2d at 722 n. 10 (citing with approval the use of a similar simplification technique in *Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 140 (1988)); *California Marine Cleaning,* 43 Fed.Cl. at 734 (averaging the CPI–U over a four-month period for simplicity).

4. The monthly COLAs, new EAJA caps, and respective EAJA awards are as follows:

| DATE OF WORK | BASELINE CPI–U (March '96) | CPI–U AT TIME OF WORK | PERCENT CHANGE | NEW EAJA CAP | HOURS BILLED | EAJA AWARD |
|---|---|---|---|---|---|---|
| Jan. '96– Feb. '96 | No COLA is made for this period because no increase in the cost of living occurred. | | | $125.00 | 20 | $ 2,500.00 |
| Apr. '96 | 155.70 | 156.30 | 0.39% | $125.48 | 18 | $ 2,258.67 |
| June '96– Aug. '96 | 155.70 | 157.00 | 0.83% | $126.04 | 6 | $ 756.26 |
| Dec. '96 | 155.70 | 158.60 | 1.86% | $127.33 | 4 | $ 509.31 |
| Feb. '97 | 155.70 | 159.60 | 2.50% | $128.13 | 3 | $ 384.39 |
| Mar. '97 | 155.70 | 160.00 | 2.76% | $128.45 | 3 | $ 385.36 |
| Apr. '97 | 155.70 | 160.20 | 2.89% | $128.61 | 5 | $ 643.06 |
| June '97 | 155.70 | 160.30 | 2.95% | $128.69 | 2 | $ 257.39 |
| July '97– Aug. '97 | 155.70 | 160.65 | 3.18% | $128.97 | 3 | $ 386.92 |
| Dec. '97– Jan. '98 | 155.70 | 161.45 | 3.69% | $129.62 | 31 | $ 4,018.10 |
| Mar. '98– Apr. '98 | 155.70 | 162.35 | 4.27% | $130.34 | 13 | $ 1,694.40 |
| June '98 | 155.70 | 163.00 | 4.69% | $130.86 | 8 | $ 1,046.89 |
| July '98 | 155.70 | 163.20 | 4.82% | $131.02 | 10 | $ 1,310.21 |
| | | | | **TOTALS:** | 126 | **$16,150.97** |

## CONCLUSION

For the reasons discussed above, plaintiff's petition for attorney fees and expenses is properly before the court notwithstanding that it was filed prior to the court's entry of final judgment. Because plaintiff was the prevailing party in the underlying litigation and his requested fees and expenses are reasonable and adequately supported, and because the government's position was not substantially justified, plaintiff's motion for fees and expenses is granted. The Clerk shall enter judgment for plaintiff in the amount of $16,437.15.