David Alan CARMICHAEL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–958C.

United States Court of Federal Claims.

Feb. 28, 2006.

Herbert W. Titus, Virginia Beach, VA, attorney of record for plaintiff David Alan Carmichael.

Lauren S. Moore, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and Bryant G. Snee, Assistant Director.

## OPINION AND ORDER

FUTEY, Judge.

This military pay case is before the court on plaintiff's Motion for Attorney's Fees and Nontaxable Expenses. Plaintiff argues that he is entitled to attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. In addition, he requests that the court award attorney's fees at the rate of $150 an hour, above the statutory rate of $125 an hour, because his case was very complex and his attorney was one of a very few qualified to prosecute the case. In the alternative, plaintiff requests a Cost of Living Adjustment (COLA) to the statutory fees. Defendant argues that plaintiff is not eligible to receive attorney's fees because defendant's position was substantially justified. In the alternative, if the court does find that plaintiff is able to collect attorney's fees, defendant maintains that the award should comply with the statutory rate.

### Factual Background [1]

Plaintiff initially filed his complaint in this case *pro se* after failing to find a qualified attorney willing to represent him. After his separation from the Navy, plaintiff claims he sent queries to the offices of two dozen lawyers and contacted several organizations seeking legal representation. All of the persons he contacted, however, allegedly refused plaintiff's request on the basis that the case

was too complex and would consume too much time. A number of the attorneys plaintiff spoke with purportedly recommended that he contact Herb Titus, a well-known constitutional litigator. Mr. Titus' office, however, informed plaintiff that Mr. Titus was unable to represent him at that time. Plaintiff then chose to pursue the case on his own, but soon discovered that he would be unable to competently represent himself.

Plaintiff decided to once again contact Mr. Titus' office and eventually was able to convince the attorney to represent plaintiff in court. Instead of charging his regular rate of $185 an hour, Mr. Titus agreed to lower his fee to $150 per hour and, in order to reduce the cost further, decided to forgo the use of a paralegal or associates. Mr. Titus explained that plaintiff himself would be responsible for the work normally assigned to an associate or paralegal. Plaintiff claims that because he was working so closely with Mr. Titus on the litigation, he was well aware of the number of hours the attorney spent working on the case. Additionally, plaintiff claims Mr. Titus did not bill him for all the hours he worked on this case.

Initially, this court dismissed plaintiff's case for lack of subject matter jurisdiction, finding that plaintiff had voluntarily separated from the Navy. *Carmichael v. U.S.*, No. 99–958, 2000 WL 34411077 (Fed.Cl. Oct. 31, 2000) (*Carmichael I*). Plaintiff appealed this decision to the Federal Circuit, which overturned this court's earlier decision. *Carmichael v. U.S.*, 298 F.3d 1367 (Fed.Cir.2002) (*Carmichael II*). On June 23, 2005 this court issued an order finding that plaintiff was wrongfully discharged from the Navy and granted plaintiff damages including back pay and retirement benefits. *Carmichael III*, 66 Fed.Cl. at 128. Accordingly, on September 23, 2005 this court issued a judgment detailing the amounts owed to plaintiff.

### Discussion

■ The United States Supreme Court has consistently given credence to the "American Rule" which requires each party

---

1. Only facts relevant to this opinion are summarized herein. The facts were discussed in greater detail in the court's opinion granting plaintiff's

motion for summary judgment, *Carmichael v. U.S.*, 66 Fed.Cl. 115 (Fed.Cl.2005) (*Carmichael III*).

to bear its own attorney fees unless a statute provides otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The EAJA is a specific waiver of sovereign immunity providing for attorney fees and, like all such waivers, is to be narrowly construed. *Chiu v. U.S.*, 948 F.2d 711, 714 (Fed.Cir.1991). The purpose of the EAJA is to minimize the burden of legal expenses where a challenge of unreasonable government action is necessary. *Gavette v. OPM*, 808 F.2d 1456, 1459–60 (Fed.Cir.1986) (en banc); accord *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir.1993) (explaining that Congress enacted the EAJA to "eliminate legal expenses as a barrier to challenges of unreasonable government action"). The EAJA is not, however, a mandatory fee shifting statute. *Gavette*, 808 F.2d at 1465.

Section 2412(d)(1)(A) of the EAJA reads as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The EAJA elaborates that "reasonable attorney fees" are encompassed within the category of "fees and other expenses." 28 U.S.C. § 2412(d)(2)(A). Although the EAJA directs that the amount of "reasonable attorney fees" be calculated on the basis of the "prevailing market rates for the kind and quality of the services furnished," it simultaneously caps the amount at $125 per hour. *Id.* The $125 figure can be exceeded, however, if "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* § 2412(d)(2)(A)(ii).

*Substantial Justification*

■ The government bears the burden of proving that its position was substantially justified. *California Marine Cleaning v. U.S.*, 43 Fed.Cl. 724, 729 (Fed.Cl.1999) (citing *Doty v. U.S.*, 71 F.3d 384, 385 (Fed.Cir. 1995)). The Supreme Court has defined "substantially justified" as meaning "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Larsen v. U.S.*, 39 Fed. Cl. 162, 167 (1997) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). To satisfy the substantially justified standard, defendant's position must have a reasonable basis in law and fact. *Id.* This determination is to be made on a case-by-case basis. *Gavette*, 808 F.2d at 1467.

The Supreme Court has cautioned against allowing a negative determination on the merits to transcend that phase of the litigation and dictate the results of an inquiry into whether the government's position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 415, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). It is conceivable that "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." *Pierce*, 487 U.S. at 569, 108 S.Ct. 2541. Although the two inquiries view the circumstances through different prisms, they are nevertheless somewhat intertwined. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. U.S.*, 837 F.2d 465, 467 (Fed.Cir.1988) (citing *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1090 (D.C.Cir.1986)). The United States Court of Appeals for the District of Columbia (D.C.Circuit) has gone as far as to state that "[i]n some cases, the standard of review on the merits is so close to the reasonableness standard applicable to determining substantial justification that a losing agency is unlikely to be able to show that its position was substantially justified." *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C.Cir. 1996).

■ Defendant argues that its position was substantially justified because its arguments had a reasonable basis in the law. Defendant points to the fact that this court dismissed plaintiff's action at first, finding

that this court did not have jurisdiction over this case because plaintiff voluntarily resigned from the Navy. *Carmichael I,* 2000 WL 34411077 at *4–*6 (Fed.Cl.2000). Further, in depositions, plaintiff's commanding officers testified that, even if they would have followed proper procedures, their decision regarding plaintiff's religious accommodation would have been the same.

Plaintiff argues that defendant's theory was not substantially justified because the Navy failed to follow its own regulations and comply with the law regarding the Board of Corrections of Naval Records. In addition, plaintiff maintains that defendant did not present evidence that the Navy would have discharged him even if it had followed the law and regulations. Therefore, despite the fact that this court agreed with defendant regarding the issue of subject matter jurisdiction, plaintiff avers that, as a whole, defendant's position was not substantially justified.

Although this court initially agreed with defendant's assertion that plaintiff voluntarily resigned, that issue was jurisdictional, and, therefore, procedural. In order to determine whether defendant's position is substantially justified the court must look at the arguments focused on the merits of the case. *Devine v. Sutermeister,* 733 F.2d 892, 897 (Fed.Cir.1984) ("[A] prevailing party should not be denied fees for its failure to prevail on every procedural motion or claim where there is no clear distinction between the former and that party's ultimate success on the merits.") In the underlying opinion, this court stated "[t]he court does not give credence to defendant's argument," that no evidence was given on one issue, and that "the Navy failed to proffer substantial evidence that its error was harmless." *Carmichael III,* 66 Fed.Cl. at 125–127. In addition, this court found that the Navy simply did not follow its own regulations in considering plaintiff's case. *Id.* "There is no justification for the government's position when clear, unambiguous regulations directly contradict that position." *Filtration Dev. Co. v. U.S.,* 63 Fed.Cl. 612, 621 (Fed.Cl.2005). In the end, this case was not a close question of fact or law, but an apparent disregard for the Navy's own rules and procedures and a fail-ure to give appropriate evidence to support defendant's case. Therefore, plaintiff is eligible to recover attorney's fees because defendant's position was not substantially justified.

*Statutory Cap*

The next question is the amount of attorney's fees to which Carmichael is entitled. The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

A. Special Factors

■ Plaintiff argues first that this court should award attorney's fees at the rate of $150 per hour because special factors justify this higher fee. The burden is on plaintiff to establish that special factors warrant an award in excess of $125 per hour. *Cox Constr. Co. v. U.S.,* 17 Cl.Ct. 29, 35 (1989) (citations omitted). Plaintiff "must demonstrate that it is the 'nature of the case,' not the nature of the litigation strategy, that 'renders the proceedings capably handled by only a limited number of attorneys.'" *Id.* at 36 (citations omitted).

■ The Supreme Court in *Pierce* squarely addressed the issue of what can constitute a special factor:

> [T]he "special factor" formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Pierce*, 487 U.S. at 572, 108 S.Ct. 2541. The Supreme Court also discussed factors which it thought did not fall within the definition of special factor: "The 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel' and the 'results obtained,' are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* at 573, 108 S.Ct. 2541 (citation omitted).

Plaintiff requests that this court grant attorney's fees at $150 per hour, above the statutory rate, because special factors exist in this case. Plaintiff maintains that because his case was rejected by a number of attorneys due to the complexity of his lawsuit and each attorney's lack of the skills necessary to represent plaintiff, there were a limited number of qualified attorneys available to handle his case. Plaintiff claims that his attorney was among that limited number because Mr. Titus had experience and specialized knowledge necessary to prosecute this extremely complicated case. In addition, plaintiff argues that the fact that his attorney lowered his fees from $185 to $150 per hour is evidence that granting him costs above the $125 hourly cap is appropriate. Finally, plaintiff claims that his overall claim for attorney's fees is reasonable because in order to reduce costs, plaintiff "spent hundreds of hours" doing the associate and paralegal work including legal research, case studies, administration and other things that would have increased the total cost.

Defendant maintains that plaintiff's counsel did not have specialized knowledge that would warrant increasing the statutory rate. Defendant argues that although Mr. Titus is highly qualified in the area of constitutional law, the issues in this case were not decided on constitutional grounds but instead on the interpretation of regulations and therefore, special knowledge or skills was not necessary to prosecute this case. Defendant maintains that, as a result, no special factors existed warranting an award above the statutory rate.

While this court acknowledges Mr. Titus' qualifications and deserved reputation, these do not justify a waiver of the $125 per hour statutory cap on fees. Each of the reasons plaintiff puts forth for allowing a $150 per hour rate, such as Mr. Titus' experience and the complexity of plaintiff's case, relate to the " 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel' and the 'results obtained' " rather than a specific skill or knowledge held by Mr. Titus "akin to admission to the patent bar or proficiency in foreign law." *California Marine Cleaning*, 43 Fed.Cl. at 733. Although it does appear that there was a dearth of attorneys willing to take plaintiff's case, and Mr. Titus' peers recommended him, none of the arguments put forth by plaintiff present the special factors needed to waive the statutory cap.

B. Cost of Living Adjustment (COLA)

Plaintiff next argues that he is entitled to a COLA. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). It is within the court's discretion to apply a cost of living adjustment. *KMS Fusion v. U.S.*, 39 Fed.Cl. 593, 603 (Fed.Cl.1997) (citing *Oliveira v. U.S.*, 827 F.2d 735, 744 (Fed.Cir.1987)). When a plaintiff seeks a COLA, the "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')." *Keeton Corrections, Inc. v. U.S.*, 62 Fed.Cl. 134, 139 (Fed. Cl.2004) (quoting *California Marine Cleaning*, 43 Fed.Cl. at 733); *see also Meyer v. Sullivan*, 958 F.2d 1029, 1035 n. 9 (11th Cir.1992) (explaining that "[t]he Supreme Court has implied that applying a cost-of-living adjustment under the EAJA is next to automatic").[2] Although defendant argues that plaintiff should not be granted the COLA because he has given no reason for it, this court has "decline[d] to impose a requirement that an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated." *California Marine Cleaning*, 43 Fed.Cl. at 733 (citations omitted). The court sees no reason to deny plaintiff a COLA.

---

**2.** *See also* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act,* 56 LA. L. REV. 1, 128

(1995) (explaining that "courts routinely approve cost-of-living adjustments").

Plaintiff and defendant have each offered different methods of applying the COLA to plaintiff's attorney's billable hours. Plaintiff included a chart in his reply applying the COLA to every day of billing throughout this six year case. According to plaintiff's method of calculation, after applying the COLA, plaintiff claims his attorney's fees should be $62,070.27 even though the actual total billing is only $60,230.00. Based on the fact that the adjustment would allow for even more than his actual attorney's fees, plaintiff contends that he should be awarded the total attorney's fees requested.

Defendant argues that if the court chooses to apply the COLA, it should only apply it to the fees billed before March 2004. Defendant maintains that the maximum hourly fee that may be granted is the actual hourly fee charged to plaintiff. Therefore, defendant avers that because applying the COLA after March 2004 would increase the statutory fee above $150, any hours billed after March 2004 should be capped at $150 an hour. Nevertheless, defendant did not provide an exact amount for the total allowable attorney's fees.

In order to calculate the COLA, courts considering EAJA applications use March 1996, the effective date of the amended statutory cap, as the baseline. *Lion Raisins, Inc. v. U.S.*, 57 Fed.Cl. 505, 519 (Fed.Cl.2003) (citing *California Marine Cleaning*, 43 Fed. Cl. at 734). Courts usually compare the March 1996 CPI to the mean or median CPI for the period of time when services were rendered. *California Marine Cleaning*, 43 Fed.Cl. at 734 (using mean CPI); *Keyava Const. Co. v. U.S.*, 15 Cl.Ct. 135, 139 (1988) (using median CPI). The courts will then increase the $125 statutory rate by the percent difference between the two (the March 1996 CPI and the mean or median CPI for the period of the litigation.)

An alternative method is to calculate the COLA month by month by comparing the March 1996 CPI to the CPI for each month an attorney billed hours. *Gonzalez v. U.S.*, 44 Fed.Cl. 764, 771 (Fed.Cl.1999). The court will then adjust the $125 cap for a given month by the percent difference between the March 1996 CPI and that month's CPI and

calculate the fees for that month by multiplying the number of hours billed by the adjusted rate. *Id.* The court will then determine the total award by adding together all the months for which bills were received. *Id.* The purpose of the COLA, by whatever means it is calculated, is to ensure plaintiff is awarded attorney's fees in line with the current market rate rather than the rate prevalent when Congress passed the EAJA.

It appears that the most accurate method of calculating the COLA is the method used in *Gonzalez* and the court will therefore employ that method with defendant's suggested modification—plaintiff can not collect more than his attorney's actual billing rate for any given month. *See Aijo v. U.S.*, 26 Cl.Ct. 432, 435 (Cl.Ct.1992) (holding that the attorney fee rate should not be more than the amount actually billed). Therefore, because plaintiff's attorney only billed $100 an hour during certain months, the court will award those months at that rate, without a COLA. In addition, as defendant points out, because applying the COLA after March 2004 would raise the statutory rate above the rate actually billed, the court will use the $150 per hour rate for those months. Using this method, plaintiff's allowable attorney's fees are $59,532.04.

*Expenses*

■ Defendant argues that any EAJA award to plaintiff should be reduced by $399.50, the amount claimed as Mr. Carmichael's traveling expenses. Defendant contends that only an attorney's travel expenses may be recovered under the EAJA. Plaintiff maintains that these costs were incurred because plaintiff was working as his counsel's paralegal during depositions and should, therefore, be considered as if they were attorney's expenses. In general, paralegal expenses are recoverable under the EAJA. *See R.C. Const. Co., Inc. v. U.S.*, 42 Fed.Cl. 57, 64 (Fed.Cl.1998). A plaintiff's travel expenses, however, even if he or she is assisting the attorney, can not be recovered. *See Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 722 (Fed.Cir.1998); *Baldi Bros. Const. v. U.S.*, 52 Fed.Cl. 78, 86 (Fed.Cl.2002). Therefore, despite plaintiff's prominent role in the prosecution of this case, he may not

recover his own travel expenses and the award must be reduced by $399.50. The court finds, and defendant does not dispute, that the remaining $5,709.50 in costs are appropriate, and will therefore grant costs in that amount.

### Conclusion

For the above-stated reasons, plaintiff's motion for attorney fees and expenses is hereby GRANTED. Plaintiff is entitled to an award of attorney's fees and expenses in the amount of $65,241.54. The Clerk of the Court is directed to enter judgment for said amount.

IT IS SO ORDERED.